IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                       )
             Plaintiff, )      Civil Case No. 06-1362-KI
                       )
and )      OPINION AND ORDER
                       )
MICHAEL GONZALES, JAYSON LEWIS, )
                       )
         Plaintiffs in Intervention )
     vs. )
                       )
VIDEO ONLY, INC., )
                       )
         Defendant. )
——————————————— )

John F. Stanley
Teri L. Healy
Equal Employment Opportunity Commission (EEOC)
909 First Avenue, Suite 400
Seattle, Washington 98104-1061

William R. Tamayo
U.S. Equal Employment Opportunity Commission
350 Embarcadero Ste. 500
San Francisco, California   94105-1260

    Attorneys for Plaintiff

Andrew M. Altschul
Buchanan Angeli Altschul LLP
321 SW 4th Avenue, Suite 600
Portland, Oregon  97204

    Attorney for Plaintiff-Intervenors

Clarence M. Belnavis
Rachelle Hong Barton
Fisher & Phillips LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon  97204

    Attorneys for Defendant


KING, Judge:

Plaintiff-intervenors Jayson Lewis and Michael Gonzales allegedly were subjected to racial, national origin, and religious harassment while working for defendant Video Only, Inc. at its Jantzen Beach store and then were retaliated against when they complained.  Plaintiff EEOC alleges claims under Title VII.  Lewis and Gonzales allege claims under Title VII, ORS 659A, 42 U.S.C. § 1981, and the Fair Credit Reporting Act.  Before the court are cross motions for partial summary judgment.  For the reasons below, I grant summary judgment to plaintiffs on their retaliation claims and strike the *Faragher* affirmative defense.  I also conclude that Video Only violated the Fair Credit Reporting Act but leave the issue of willfulness for the jury.


Page 2 - OPINION AND ORDER

## FACTS

Michael Gonzales and Jayson Lewis worked at Video Only's Jantzen Beach store. Peter Edwards is Video Only's president and owner. James Lothian is general manager. Lothian's duties include managing the relationships with the company's attorneys, insuring that the company complies with labor and employment laws, and reviewing new hires. James McGuire, the area manager for Oregon, worked out of the Jantzen Beach store. Cyle Wood was the Jantzen Beach store manager.

Lewis and Gonzales both signed employment applications which contained three paragraphs immediately above the signature line. The first of these paragraphs informs the applicant that, pursuant to State and Federal Fair Credit Reporting Act[s], a background investigation may be obtained for employment purposes. The third of these paragraphs authorized Video Only and the investigation service to solicit information, including through the use of personal interviews.

The Video Only Employee Handbook contained a section on unlawful harassment which prohibited harassment of all groups protected by law. The policy gave examples of unlawful behavior and told employees to report harassment by confronting the harasser if possible, or giving a written complaint to the employee's supervisor, any other supervisor, or management personnel. The policy stated that complaints would be investigated, remedial action would be taken and made known to the complaining employee, and the company would not permit retaliation for filing a complaint. The Handbook is given to all new hires but several employees testified in deposition that they only skimmed it.

On November 1, 2005, Andrew Altschul, attorney for Lewis and Gonzales, sent a letter to Edwards complaining that the two employees were being harassed and discriminated against. The letter detailed numerous specific incidents of harassment by both managers and co-workers on a constant basis.

Within a few days, Edwards summoned McGuire to Edwards' office in Seattle to discuss the letter. According to Edwards, McGuire was stunned and did not think the charges were true. Edwards told McGuire to review the situation with Cyle Wood and for the two of them to give Edwards a report. Edwards told McGuire that the matter was substantial and could not be ignored. Edwards also told McGuire to keep the issue "under his hat." McGuire Dep. at 258-59.

McGuire returned to the store and, on Edwards' instruction, removed from the walls pictures and cartoons which Altschul complained about in his letter.

Four or five days later, McGuire called Edwards and told him that he had considered the letter and thought that there were some things said at the store but that it was all normal sales camaraderie and banter.

Edwards states that within a day or two after speaking to McGuire, Edwards asked Lothian to engage an investigator to wait on standby for use in the investigation of the harassment complaints. Lothian contacted Lynn McKinney, a private investigator who had done some theft investigations for Video Only. Lothian asked McKinney to check out a couple of employees, Lewis and Gonzales, but did not mention that the investigation was in relation to claims of harassment. Lothian intended to have McKinney broaden the investigation later to check into the harassment allegations. Lothian believed that Edwards instructed him to structure

the investigation in this manner. Edwards denied that he requested a background investigation of Lewis and Gonzales.

Lewis was told by his fiancee that an investigator spoke to her mother to ask if Lewis had ever beaten her. Lewis was told by former coworkers that the investigator came to their workplaces to ask if Lewis had ever sued anybody for race discrimination. Gonzales was told by a former manager and by family members that a private investigator was asking disturbing questions about him. McKinney also ran criminal background checks on the two men.

At about the same time that he hired McKinney, Lothian also retained the Amburgey & Rubin law firm to assist with the investigation of the harassment allegations. The law firm had Lothian call off the McKinney investigation. A lawyer from Video Only called McKinney, told him to "cease and desist," and told him not to write a report. McKinney never delivered a report, either written or oral, to anyone.

On January 3 and 4, 2006, Lewis and Gonzales filed charges with the EEOC.

At the request of Altschul, Video Only temporarily transferred Lewis in mid-January 2006 to the Beaverton store. Altschul requested this transfer only if it would be an undue hardship to Video Only to immediately transfer McGuire and another alleged harassing employee out of the Jantzen Beach store. After a week, Lewis asked to be transferred back to Jantzen Beach and returned there.

Video Only's attorney conducted training sessions on January 31 and February 1, 2006 concerning the procedures for responding to claims of harassment and discrimination. Store managers and sales managers were required to attend. Calista Branesky was named at the training as the point of contact. Her other duties included dealing with employee compensation

and employee benefits.  Branesky was not comfortable handling complaints of discrimination,

harassment, or retaliation and intended to refer all of them to Lothian.  Prior to this training, the

only training on harassment was provided during the 1990s to area managers during general retail

management seminars.

The Saturday following the training, McGuire had a meeting with everybody in the

Jantzen Beach store and a second meeting with warehouse employees to tell everyone that

harassment would not be tolerated and that if anybody felt uncomfortable for any reason to bring

it to the attention of one of the local supervisors or to call Lothian or Branesky in Seattle.

On February 10, 2006, Video Only transferred McGuire to the Beaverton store.  Edwards

does not consider the transfer a form of discipline because Video Only has not yet reached a

conclusion on who was the offending party.  McGuire earned nearly as much in the Beaverton

store as in the Jantzen Beach store and, in hindsight, saw the move as positive.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party.  Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

I.    <u>Retaliation Claims</u>

The EEOC, Gonzales, and Lewis (collectively, "plaintiffs") jointly seek summary judgment on their retaliation claims alleged under Title VII, ORS 659A, and § 1981.  If successful, they ask that damages be awarded by a jury.

Plaintiffs note that Video Only hired an investigator to check into the backgrounds of Gonzales and Lewis after Altschul sent the letter complaining of harassment.  Plaintiffs argue that during the first month after receiving the letter, Video Only made no effort to investigate their concerns.  Because of the nature of the investigation, plaintiffs contend that they are entitled to summary judgment.  According to plaintiffs, the issue is not whether Gonzales and Lewis felt the act was retaliatory or whether Video Only had a pure evil motive.  Instead the issue is whether Video Only knowingly or recklessly engaged in conduct that might negatively impact a reasonable worker from coming forward in the future.

Video Only contends that there is a factual issue concerning its motive in hiring the investigator.  According to Video Only, it had never investigated a discrimination complaint and decided to hire an investigator to perform the actual investigation with outside counsel guiding the process.  Based on incomplete instructions, the investigator started checking the employees' backgrounds rather than the harassment allegations.  Video Only argues that a jury could find that its intent was to investigate the harassment allegations and not retaliate against the employees who came forward.

Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII.  To establish a Title VII retaliation

Page 7 - OPINION AND ORDER

claim, a plaintiff can establish a prima facie case by establishing the following factors:  (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action.  If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).

Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington North. & Santa Fe Ry. Co. v. White, 548 U.S. 52, 67, 126 S. Ct. 2405 (2006).  In a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68 (internal quotation omitted).

Video Only does not dispute for purposes of this motion that Altschul's November 1, 2005 letter is protected activity or that the background investigation was an adverse employment action.  Based on the record before me, I agree.  In particular, I conclude that the background investigation would be aggravating to most employees and might dissuade them from complaining about discrimination.  The only issue is about the causal link.

This is a very different situation from a typical retaliation claim in which the parties dispute whether an action such as a termination was taken in retaliation for complaining about discrimination.  Here, it is undisputed that the only reason Video Only began the background investigation was in response to Altschul's letter.  If Video Only had not received the letter, it would not have retained the investigator.  I am unconvinced of the relevance of Video Only's argument that there is a factual issue on whether it had a retaliatory motive when it ordered the

investigation or, as it contends, the instructions about beginning the investigation became confused within the corporation.  In either case, Video Only ordered the investigation *because of* Gonzales' and Lewis' complaints and for no other reason.  In either case, the effect on Gonzales and Lewis is the same.  Likewise, the investigation's likelihood to dissuade others from complaining about discrimination is unchanged by Video Only's motive.

The causal link here is so clear that it is causing confusion because of the uniqueness of the situation.  I conclude as a matter of law that Video Only violated Title VII by retaliating against Gonzales and Lewis when it ordered the background investigation.

Both the state law retaliation claim and the § 1981 retaliation claim are analyzed the same way.  ORS 659A.030(1)(f); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008) (§ 1981); CBOCS West, Inc. v. Humphries, __ U.S. __, 2008 WL 2167860, *4 (May 27, 2008) (§ 1981 encompasses employment-related retaliation claims).

I grant plaintiffs' motion for summary judgment and hold that Video Only is liable for the retaliation claims alleged under Title VII, ORS Ch. 659A, and § 1981.  The jury will determine the damages at trial.

II.    *Faragher* Affirmative Defense

Video Only alleged in its second affirmative defense that plaintiffs' claims are barred in whole or in part because Video Only exercised reasonable care to prevent and correct any harassing or discriminatory behavior and plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities to avoid harm.

Although an employer can be strictly liable for a supervisor's harassment under certain circumstances, employers can escape liability if they can prove an affirmative defense first stated

Page 9 - OPINION AND ORDER

by the Court in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998). If no tangible employment action was taken against the employee, the employer may prove the affirmative defense by a preponderance of the evidence by showing: (1) it exercised reasonable care to prevent and correct the harassment; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities or otherwise failed to avoid harm. <u>Hardage v. CBS Broadcasting, Inc.</u>, 427 F.3d 1177, 1185, 1188 (9th Cir. 2005), <u>cert. denied,</u> 127 S. Ct. 55 (2006). The first prong of the defense requires both preventative and remedial measures. <u>Id.</u> at 1185.

Plaintiffs jointly seek summary judgment dismissing the *Faragher* affirmative defense.[1] Neither Gonzales nor Lewis contend that they suffered a tangible employment action. Moreover, one of the alleged harassers, McGuire, was their supervisor. Thus, the defense is generally available to Video Only.

I must address an evidentiary issue, however. Plaintiffs moved to compel documents resulting from the investigation conducted by the Amburgey & Rubin law firm. I denied the motion to compel based on Video Only's representation that it would not rely on this investigation to prove the *Faragher* defense. Because conducting the investigation supports Video Only's position, my ruling that it could not rely on the investigation means that for purposes of this motion, or the jury trial for that matter, Amburgey & Rubin did not conduct an investigation at all.

---

[1] Plaintiffs confirmed in their reply brief that they are not basing their motion on the second prong of the defense–whether they unreasonably failed to take advantage of any preventative or corrective opportunities–because Video Only cannot rely on the defense if it cannot prove the first prong.

A.    Prevention of Harassment

Plaintiffs contend there is no evidence that Video Only exercised reasonable care to prevent harassment.  Although Video Only has a written anti-harassment policy within its Employee Handbook, plaintiffs argue that Video Only did not take any measures to encourage employee or managerial awareness about the policy.  Plaintiffs note that no training on the policy was held prior to the present complaints and that many employees and managers testified that they only skimmed the Handbook.

Video Only contends that the issue is whether it took reasonable steps to prevent harassment, not whether it could have done more.  The company argues that its anti-discrimination policy is thorough and exceeds some policies deemed sufficient by courts.  Because the policy is included in its Employee Handbook that is distributed on the first day of work, Video Only contends that the dissemination of the policy is sufficient under Ninth Circuit case law.  The company also notes that both Gonzales and Lewis signed acknowledgments that they received the Handbook, had an opportunity to review it, and understood the personnel policies.

The content of the Video Only anti-harassment policy is similar to the policy approved in Kohler v. Inter-Tel Technologies, 244 F.3d 1167, 1180 n.10 (9th Cir. 2001).  Both policies state that the companies are committed to providing an environment free from harassment and that harassment is a serious offense which subjects offenders to discipline up to and including termination.  Both policies set up a complaint procedure with multiple people to choose from to take a report.  Both policies state that an investigation will occur and retaliation is prohibited.  Video Only's policy also includes a list of possible harassing conduct.  Both companies distribute

Page 11 - OPINION AND ORDER

the policies on the first day of work.  Plaintiffs point out that the policy in <u>Kohler</u> was distributed

separately from the handbook, which included a separate summary of the policy.  I see little

significance to this difference.  Video Only's policy is not difficult to find in the Employee

Handbook and is listed in the table of contents.

I also note that there was no employee training on harassment in <u>Kohler</u>, as was the case

at Video Only prior to plaintiffs' complaints.  <u>Kohler</u> affirmed the district court's summary

judgment ruling that the dissemination of the policy established that the employer exercised

reasonable care to prevent harassment in the workplace.  <u>Id.</u> at 1180.  Although training in

addition to dissemination of a written policy is preferable, I am unaware of any Ninth Circuit

cases requiring training in order to prevail on the *Faragher* defense.  Accordingly, I conclude that

Video Only has created a factual issue on whether it exercised reasonable care to prevent the

harassment.

B.    <u>Correction of the Harassment</u>

Plaintiffs also contend there is no evidence that Video Only exercised reasonable care to

promptly correct the harassment.  They note that Video Only failed to investigate their

complaints.  Instead, it hired an investigator to look into the background of Gonzales and Lewis.

Training held in response to these complaints did not clearly spell out everyone's role in handling

complaints and only select managers were trained.  According to plaintiffs, Video Only did not

demand that the harassment cease, did not threaten to discipline anyone, and told McGuire to

keep the complaints under his hat.  Plaintiffs argue that the transfer of McGuire occurred too late

to be considered prompt remedial action and was not disciplinary in nature.  Plaintiffs

characterize Lewis' temporary transfer, at Lewis' request, as nonremedial because Video Only

was unresponsive during the time to Lewis' inquiries into McGuire's status at the Jantzen Beach

store, resulting in Lewis returning to that store.

Video Only contends that it has raised a factual issue that it exercised reasonable care to

promptly correct the harassment.  It argues that after the training, managers understood their roles

in responding to new complaints of harassment.  In specific response to the complaints alleged by

Gonzales and Lewis, Video Only notes that Edwards summoned McGuire to Seattle to discuss

the matter the day after receiving the letter.  Edwards asked Lothian to hire an investigator, get

legal counsel, and initiate an investigation.  After the initial investigator went off-track,

Amburgey & Rubin instructed the investigator to cease work.  McGuire removed any

questionable material from the store, Lewis was temporarily transferred at his request, McGuire

implemented the training in the Jantzen Beach store, and McGuire was demoted and transferred.

Video Only argues that the Ninth Circuit does not absolutely require an investigation because the

sufficiency of the remedial steps are the important issue.  It notes that some of the above conduct

was an internal investigation and that the response was reasonably prompt.

The parties dispute whether an investigation into the harassment allegations is a

requirement for the *Faragher* defense.  Over a strong dissent, the Ninth Circuit stated:

> In <u>Swenson v. Potter</u>, 271 F.3d 1184 (9th Cir. 2001), we explained that "[n]otice
> of the sexually harassing conduct triggers an employer's duty to take prompt
> corrective action that is 'reasonably calculated to end the harassment.'" <u>Id.</u> at
> 1192 (citations omitted).  "The reasonableness of the remedy depends on its
> ability to: (1) 'stop harassment by the person who engaged in harassment;' and
> (2) 'persuade potential harassers to refrain from unlawful conduct.'" <u>Nichols</u>, 256
> F.3d at 875.  Although an "investigation is a key step," <u>Swenson</u>, 271 F.3d at
> 1193, we "consider the overall picture" to determine whether the employer's
> response was appropriate. <u>Id.</u> at 1197.

Hardage, 427 F.3d at 1186.  Hardage held that the employer was properly granted summary

judgment in its favor, based on the *Faragher* defense, when the employer conducted no

investigation at the express request of the complaining employee.  Id. at 1188.  Thus, although an

investigation is a key step, it is not absolutely required.

The appellate court in Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864 (9th

Cir. 2001), reversed the trial court's finding for defendant after a bench trial.  Nichols held that

the employer did not exercise reasonable care to promptly correct the harassment.  Id. at 877.

The employer "made no effort to investigate [plaintiff's] complaint; it did not discuss his

allegations with the perpetrators; it did not demand that the unwelcome conduct cease; and it did

not threaten more serious discipline in the event the harassment continued."  Id. at 876.  The

human resources director told the plaintiff to report if offensive conduct recurred.  The director

also conducted a handful of spot checks during the two weeks after plaintiff's complaint.  The

court characterized this as placing "virtually all of its remedial burden on the victimized

employee."  Id.

Video Only took the following steps to correct the harassment.  Edwards immediately

summoned McGuire, the highest level manager at the Jantzen Beach store, to come to Seattle to

respond to the allegations in Altschul's letter.  McGuire immediately removed pictures and

cartoons objected to in the letter.  After two and one half months, Lewis was temporarily

transferred to another store.  Lewis requested the transfer because the work environment was still

unacceptable to him.  After three months, Video Only held a training for managers at Jantzen

Beach.  McGuire followed this up with a brief meeting for all employees at the store to state that

harassment was unacceptable and to explain the complaint mechanism.  After three and one half

months, Video Only transferred McGuire to the Beaverton store.  There is a factual issue on whether the transfer was a demotion.  Although McGuire's title was reduced, his earnings were nearly the same.

Video Only also engaged, or failed to engage, in conduct which weighs against its argument that it exercised reasonable care to promptly correct the harassment.  Other than talking to McGuire, Video Only did no further investigation into the problem.  It did not talk to other alleged harassers.  It did not talk to the victims to gain additional details.  Instead, it began a background investigation of the victims which I held to be retaliatory as a matter of law.  There is no evidence that demands were made to individual harassers that they stop the behavior or face serious discipline.  There is no evidence that anyone was disciplined at all, other than possibly McGuire, who looks back at his transfer as a positive move.  Video Only failed in many of the same respects as the employer in <u>Nichols</u>.

In addition, most of the positive actions Video Only took were delayed three months. The company cites <u>Dhyne v. Meiners Thriftway, Inc.</u>, 184 F.3d 983 (8th Cir. 1999), to argue that a two-month delay does not foreclose the *Faragher* defense because the actions were not prompt enough.  <u>Id.</u> at 988 (in affirming trial court's denial of judgment as a matter of law on harassment claim, appellate court held that a reasonable jury could find that employer should not have delayed two months before taking effective action or bringing complaints to higher management).  I first note that Video Only's three month delay is fifty percent longer than the two-month delay in <u>Dhyne</u>.  Further, even if Video Only was not sure who was responsible for the harassment, the pictures and cartoons that McGuire removed demonstrated that training was necessary.  The record provides no reason for a three-month delay in holding a training.

Page 15 - OPINION AND ORDER

Moreover, the more extensive training was only provided to managers and not all employees,

who were only spoken to by McGuire at a brief meeting, also delayed three months.  Employers

who successfully avoided liability have acted much more promptly.  See Montero v. AGCO

Corp., 192 F.3d 856, 862 (9th Cir. 1999) (within eleven days after plaintiff's complaint of

harassment, corporate managers flew from Illinois to California, investigated the complaint,

terminated one harasser, and formally disciplined two others).

    After considering the overall picture, I conclude that Video Only has not raised a factual

issue that it exercised reasonable care in promptly correcting the harassment.  Consequently, it

cannot avoid liability through the *Faragher* defense.  I grant plaintiffs' motion and strike the

defense.

III.    Fair Credit Reporting Act Claim

    Gonzales and Lewis allege that Video Only violated the Fair Credit Reporting Act

("FCRA") by willfully failing to comply with the permissible purposes and disclosure

requirements of sections 604 and 606 of the Act, 15 U.S.C. §§1681b and 1681d.  More

specifically, plaintiffs contend in their motion that Video Only willfully violated the FCRA by

attempting to procure a consumer report and investigative consumer report for an improper

purpose, without proper disclosure, and under false pretenses.  The parties filed cross motions for

summary judgment on the claim.  If plaintiffs prevail, they ask that actual damages, statutory

damages, and punitive damages be determined at trial.

    Plaintiffs argue that Video Only hired a private investigator, McKinney, to conduct

background checks of Gonzales and Lewis immediately after receiving their counsel's letter

complaining of harassment.  Because McKinney used personal interviews to obtain information,

Page 16 - OPINION AND ORDER

plaintiffs argue that Video Only requested both consumer reports and investigative consumer reports.  The only notification plaintiffs had prior to Video Only's hiring of McKinney was a notice in their signed employment applications that the company might obtain a background investigation and might rely on personal interviews.

Plaintiffs argue that Video Only violated several FCRA requirements:  (1) the reports must only be obtained for one of the listed employment purposes; (2) the inquiry may not violate any federal or state law, specifically, that the report was sought in retaliation for reporting the harassment; (3) the reports were commissioned under false pretenses because Video Only did not inform McKinney that plaintiffs had complained about harassment; (4) there was no disclosure in a separate document that a consumer report may be obtained for employment purposes; and (5) the investigative consumer report was not disclosed in writing within three days after the report was first requested.  Plaintiffs contend that the disclosure violations are willful, entitling them to punitive damages.

Video Only's main defense is that McKinney never provided any type of report to Video Only because after he took the initial steps in his investigation, McKinney was told to stop the investigation and not to prepare a report.  Video Only contends that the FCRA can only be violated if the company actually uses or obtains a consumer report.  It argues that the collection of information does not fall within the definition of a report because, under the statute, a report is something that is furnished by the consumer reporting agency.

A.    The Need for a Completed Report

One of Congress's stated findings supporting enactment of the FCRA is that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

The damage to the privacy right is first inflicted when a person starts gathering data for a consumer report, even if no oral or written report is ever delivered to the requester.  That point is underscored by the fact that Lewis and Gonzales were both warned by former employers that someone was asking questions about them.  Further, both men started calling other former employers to warn that an investigator was likely to come calling.  Lewis was extremely upset by the questions put to his fiancee's mother.

I realize that only one section of the FCRA specifically refers to inquiries:

> A consumer reporting agency shall not make an inquiry for the purposes of preparing an investigative consumer report on a consumer for employment purposes if the making of the inquiry by an employer or prospective employer of the consumer would violate any applicable Federal or State equal employment opportunity law or regulation.

15 U.S.C. § 1681d(d)(2).  An argument can be made that if inquiries–with no report following–were to violate the Act, Congress would have specified inquires in other sections.  I do not believe that this argument outweighs the stated finding supporting the FCRA.  Accordingly, I conclude that Video Only can be liable for violations of the FCRA even though it called off the McKinney investigation prior to any report being made.

Under the following definitions, Lothian's general instructions to McKinney would have resulted in both a "consumer report" and an "investigative consumer report" if McKinney's efforts had not been stopped.

Page 18 - OPINION AND ORDER

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for –

(A) credit or insurance to be used primarily for personal, family or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d).

The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

15 U.S.C. § 1681a(e). In sum, I conclude no completed report is necessary to violate the FCRA.

B.    Violations of the FCRA

Video Only argues that two of the subclaims–that the report violates another law and that the report was commissioned under false pretenses–were not pleaded or raised in any other context and should not be considered on summary judgment.

Plaintiffs are not required to plead the precise portions of a statute that were violated, as long as defendant has fair notice of the factual basis of the claim. Additional specificity can be sought through discovery devices. See Crull v. GEM Insurance Co., 58 F.3d 1386, 1391 (9th

Cir. 1995) (pleadings do not need to identify a particular legal theory under which recovery is sought); Mendiondo v. Centinela Hospital Medical Center, 521 F.3d 1097, 1104 (9th Cir. 2008) (plaintiff must give defendant fair notice of the claim and the grounds on which it rests); Skaff v. Meridien North America Beverly Hills, LLC, 506 F.3d 832, 842 (9th Cir. 2007) (discovery can provide specificity on the claims). Plaintiffs' factual allegations are adequate for the court to consider all portions of the statute which they now argue Video Only violated.

I grant summary judgment of liability that Video Only violated the following sections of the FCRA:

1. 15 § 1681b(b)(2)(A)(I). This section provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure.

2. 15 § 1681d(a)(1)(A). A person may not procure an investigative consumer report unless he discloses to the consumer that this may be done and the disclosure is written and delivered to the consumer not later than three days after the date on which the report was first requested. Video Only did not make this disclosure.

3. 15 § 1681b(a)(3). Video Only did not seek a report for one of the permissible purposes listed in the FCRA. The only purpose which comes close–employment purposes–is defined as a report used to evaluate a consumer for employment, promotion, reassignment, or retention as an employee. 15 U.S.C. § 1681a(h). Lothian did not obtain the report for one of

these reasons and admits there was no misconduct on the part of Lewis or Gonzalez, one of the exclusions under 15 U.S.C. § 1681a(x).

4. An additional violation for obtaining a consumer report under false pretenses for failing to disclose the impermissible purpose for which the report is desired. Hansen v. Morgan, 582 F.2d 1214, 1219-20 (9th Cir. 1978) (interpreting 15 U.S.C. § 1681q).

In defense of the false pretenses subclaim, Video Only argues that it did not mislead McKinney by telling him its motivation was due to one reason when it was really another. Instead, Video Only contends that it initiated its discrimination investigation by investigating plaintiffs' backgrounds. This point is not relevant to the analysis described in Hansen, however, which considers the statutory permissible purposes and not the underlying motive.

I do not find that Video Only violated 15 U.S.C. § 1681d(d)(2), which states:

> A consumer reporting agency shall not make an inquiry for the purpose of preparing an investigative consumer report on a consumer for employment purposes if the making of the inquiry by an employer or prospective employer of the consumer would violate any applicable Federal or State equal employment opportunity law or regulation.

I interpret this section to allow for liability against only the consumer reporting agency, McKinney here, and not against Video Only. I grant Video Only's motion and dismiss this section of plaintiffs' claim.

The jury will be deciding the damages for these violations. I cannot say as a matter of law that Video Only acted willfully, as it is defined by the FCRA, and leave the issue for the jury.

**CONCLUSION**

Plaintiffs' Joint Motion for Summary Judgment on Defendant's Second Affirmative Defense (#67) is granted. Plaintiff-Intervenors' Motion for Summary Judgment on their Fair Credit Reporting Act Claim (#72) is granted in part. Plaintiffs' Joint Motion for Summary Judgment on their Claims of Retaliation (#74) is granted. Defendant Video Only's Motion for Partial Summary Judgment (#79) is granted in part and denied in part.

IT IS SO ORDERED.

Dated this _____11th_____ day of June, 2008.


    __/s/ Garr M. King_____
    Garr M. King
    United States District Judge